ML:TAW/DJL
F. #2017R00702

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

ANIS KHAN and
DALJEET SINGH,
    a/k/a AKHTAR IQBAL,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**To Be Filed Under Seal**

AFFIDAVIT AND
COMPLAINT IN SUPPORT
OF APPLICATION FOR
ARREST WARRANT

(18 U.S.C. § 1029(b)(2))

19-M-571

EASTERN DISTRICT OF NEW YORK, SS:

WILLIAM DUFFIN, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

In and between February 2015 and June 2017, within the Eastern District of New York and elsewhere, the defendants ANIS KHAN ("KHAN") and DALJEET SINGH ("SINGH"), also known as AKHTAR IQBAL, together with others, did knowingly and with intent to defraud did traffic in and use one or more unauthorized access devices, in a manner affecting interstate commerce, and by such conduct did obtain something of value during any one year period, the aggregated value of which is equal to or greater than $1,000.

(Title 18, United States Code, Section 1029(b)(2))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I am currently assigned to the El Dorado Task Force ("Task Force"), a multi-agency federal and state task force investigating financial crimes. My duties include conducting and assisting in investigations into various financial frauds including access device fraud and identity theft. I have participated in numerous investigations involving financial frauds, during the course of which I have interviewed suspects and witnesses, executed court-authorized search and arrest warrants and used other investigative techniques to secure relevant information, including the examination of computers and other electronic devices. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to carry out their activities. I am familiar with the facts and circumstances set forth below from my participation in the investigation, discussions with other law enforcement officials, my review of documents and my training and experience. Statements attributable to individuals herein are set forth in sum and substance. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2. During the course of my work as an agent, I have been involved in investigations of what are commonly referred to as credit card bust-out schemes and synthetic identity fraud schemes.

3. In a credit card bust-out scheme, individuals possessing counterfeit or unauthorized credit cards typically take their credit cards to collusive merchants who make fraudulent charges on these cards. These fraudulent charges include, but are not limited to, charges that purport to be for merchandise or services, but for which no actual merchandise or services are exchanged, and charges for which the collusive merchants and credit card holders know the card issuer will never be paid. Frequently, the collusive merchant is paid a fee by the credit card holder, often a percentage of the value of the fraudulent charges, for the fraudulent use of the credit cards. Collusive merchants typically keep between 10 and 25 percent of the amount of the charge. In order to pay the cardholder his share, the collusive merchant must pay by check from the collusive bank account or withdraw cash, which is preferable to the cardholder because there is no paper trial. However, frequent cash withdrawals raise the awareness of banks, so it is not uncommon for co-conspirators to use both methods.

4. In a synthetic identity fraud scheme, the perpetrators of the scheme will typically open bank and credit card accounts in the names of one or more other individuals. The putative account holders are not real people. Rather, the perpetrators combine various pieces of personal identifier information (e.g., names, dates of birth, addresses and Social Security numbers) from different individuals, either real or fictitious, to create a fictitious synthetic identity that appears, for all intents and purposes, to represent a real person but, in reality, does not. The perpetrators typically open various types of accounts at different

financial institutions for a given synthetic identity using the same synthetically-combined personal identifier information. Possession and use of a stable of synthetic identities frequently permits fraud perpetrators to commit a substantial number of credit card bust-out frauds.

5. In addition to direct fraudulent transactions with financial institutions, perpetrators of line of credit fraud, credit card bust-out schemes and synthetic identity fraud frequently create and/or control shell companies (which have little or no legitimate business purpose) from which seemingly legitimate purchases of goods or services are made or to which charges from fraudulent credit or debit cards are sent. Shell companies are also frequently used to write checks to artificially inflate the credit limit for a credit card account, make fraudulent deposits into checking accounts, or make fraudulent repayments on line of credit accounts. Investigating agents frequently discover that a company is a shell company with no legitimate business purpose through a number of methods. For example, investigating agents may determine that the address purportedly used to conduct business is either fictitious or that there is no apparent business activity being transacted there that matches the ostensible business purpose of the firm. A review of bank accounts and other financial statements for the company may reveal that there are no apparent legitimate business income or business expenses, such as payroll, expenses or cost of goods. Additionally, investigating agents may identify fraudulent bank and credit card accounts used for line of credit fraud or credit card bust-outs and discover from financial records that a company with no apparent legitimate business purpose is receiving a high volume of transactions-including debit card and credit card transactions-from these fraudulent accounts,

indicating that one of the primary purposes of the company is to facilitate the use of such fraudulent accounts.

## SUMMARY

6. As set forth below, the defendants' conduct involved withdrawing the proceeds of credit card bust-outs and synthetic identity fraud for personal gain and making payments to the shell companies of their co-conspirators. SINGH and KHAN utilized at least five synthetic identities to, among other things, make fraudulent charges using credit cards in the names of various synthetic identities with no intention of paying those debts.

7. SINGH is also believed to control at least one company, Skylink, Inc., a shell company which is used to accept purchases from fraudulent credit cards controlled by SINGH and/or his co-conspirators. Skylink, Inc., was used as a shell company to accept charges from synthetic identities, including identities controlled by SINGH. SINGH is the owner of Skylink, Inc.

8. SINGH is also known as "Akhtar Iqbal." SINGH has a Washington state driver's license. A photo of that license was obtained by law enforcement officers. The individual in that photograph is the same individual in the Pennsylvania driver's license photograph for "Akhtar Iqbal."

9. As described in further detail below, using evidence of surveillance photographs, addresses, Internet Protocol ("IP") addresses, bank accounts, and fraudulent purchases made through shell companies, KHAN and SINGH were identified as a participants in related credit card fraud and line of credit fraud.

10. For example, TD Bank surveillance camera photographs captured SINGH conducting transactions for the shell company, Skylink, Inc. On or about July 5,

2016, surveillance footage captured SINGH making a $4,750 deposit to a TD Bank account associated with Skylink, Inc. On or about July 7, 2016, surveillance footage captured SINGH making a $7,600 deposit to a TD Bank account associated with Skylink, Inc.

### PROBABLE CAUSE TO ARREST THE DEFENDANTS

11. The defendants KHAN and SINGH used synthetic identities while participating in the fraudulent scheme to withdraw the proceeds in cash from accounts in the names of synthetic identities and shell companies.

A. The Defendant SINGH's Conduct

12. From, on or about, October 2015 to May 2017, SINGH used credit cards busted out in the names of synthetic identities to charge more than $36,000 to Skylink, Inc. For example:

    i. On or about October 29, 2015, a credit card busted out in the name of the synthetic identity "Gohar Cheema" charged $915 to the benefit of Skylink, Inc.;

    ii. On or about September 28, 2016, a credit card busted out in the name of synthetic identity "Haleem Dehal" charged $2,395.36 to the benefit of Skylink, Inc.; and

    iii. On or about May 10, 2017, a credit card busted out in the name of synthetic identity "Naeem Iqbal" charged $850 to the benefit of Skylink, Inc.

13. SINGH has also created at least six credit cards busted out in the name of the synthetic identity "Akhtar Iqbal." These six credit cards have resulted in losses over $63,000 to the issuing financial institutions.

14. Records obtained from the banks that issued these credit cards obtained under the name "Akhtar Iqbal" revealed that the address provided included 458 Middletown

Avenue, New Haven, Connecticut and 460 Middletown Avenue, New Haven, Connecticut. The internet protocol address associated with "Akhtar Iqbal" is 68.194.250.67 and a telephone number of (718)-441-3529. Several synthetic identities have been created that are associated with the same address, internet protocol address and telephone number.

15. The charges on these synthetic identities created with the information include at least 15 credit card charges to Skylink, Inc., owned by SINGH. The total of the fraudulent charges on these busted out credit cards exceeds $200,000.

B. Defendant KHAN's Conduct

16. On or about December 28, 2015, a payment of $656.99 was made to pay traffic and parking violations using a busted-out credit card associated with the synthetic identity "Gohar Cheema." The payment was to the benefit of KHAN.

17. On or about December 26, 2015, a payment of $943.50 was made to pay a traffic and parking violation using a busted-out credit card associated with the synthetic identity "Aleem Cheema." The payment was to the benefit of KHAN.

18. Bank records reveal that at least three synthetic identities: "Ejaz Ahmed," "Arsalan Saleem" and "Faraz Shah," used KHAN's home address.

19. On or about March 2, 2015, KHAN used a busted-out credit card associated with the synthetic identity "Asad Malik" for $1,484.44 worth of charges to CVS Pharmacy. Records obtained from CVS Pharmacy revealed that numerous items were purchased and that a CVS Care Card was presented in connection with those purchases. The phone number associated with that CVS Care Card was associated with KHAN according to T-Mobile subscriber records.

20. On April 5, 2015, KHAN used one of these busted-out credit cards in the name of the synthetic identity "Arsalan Saleem" for $2,009.93 worth of charges to CVS Pharmacy. Records obtained from CVS Pharmacy revealed that four visa gift cards were purchased. The purchaser used a CVS Care Card that had a phone number on file that is associated to KHAN according to T-Mobile subscriber records.

21. In total, six synthetic identities have been associated with KHAN through his purchases and home address. These six synthetic identities resulted in twelve credit card accounts that were busted out, causing a loss of over $100,000 to financial institutions.

WHEREFORE, your deponent respectfully requests that the defendants ANIS KHAN and DALJEET SINGH, also known as "Akhtar Iqbal," be dealt with according to law.

*[signature: William Duffin]*

WILLIAM DUFFIN
Special Agent, United States Department of Homeland Security, Homeland Security Investigations

Sworn to before me this
25 day of June, 2019

*[signature]*

THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK